[Cite as *In re C.G.*, 2026-Ohio-2909.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: C.G.
    A.G.

C.A. Nos.    31767
               31768

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 25 09 0485
             DN 25 09 0486

DECISION AND JOURNAL ENTRY

Dated: July 29, 2026

STEVENSON, Judge.

{¶1} Appellant, A.D. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of C.G., born March 26, 2022; and A.G., born April 5, 2021. The children's father ("Father") did not appeal from the trial court's judgment.

{¶3} Mother and Father have a long history with children service agencies involving these and several older children. C.G. and A.G. were previously removed from the parents' custody and adjudicated neglected and dependent during 2022, but those juvenile cases are not part of the record in this appeal. The record in this case does include evidence that the 2022

adjudications and case plan focused on Mother's substance abuse, untreated mental health diagnoses, and her inability to provide for the basic needs of the children. After nine months outside Mother's care, the juvenile court returned the children to Mother's custody. The court closed those cases during July 2024.

{¶4} The current cases began on September 10, 2025, when CSB filed complaints to allege that C.G. and A.G. were abused, neglected, and dependent children because of Mother's lengthy history of substance abuse and untreated mental illness; her recent drug overdose that required four doses of Narcan to revive her; alleged sexual abuse of the children by Mother's male companion; the poor condition of the home; and both parents' lengthy history with children service agencies involving older children. In addition to the 2022 juvenile cases with C.G. and A.G., the parents had several other cases with siblings and half-siblings of these children. In 2020, both parents had their parental rights involuntarily terminated to a full sibling of these children, a child named J.G. The complaints further alleged that Father was unable to care for C.G. and A.G. because he was confined to a wheelchair and unable to speak because of injuries he suffered several years ago in a motor vehicle accident and a subsequent stroke.

{¶5} The agency later filed amended complaints to seek permanent custody as its initial disposition of C.G. and A.G. and to allege that Mother had recently tested positive for methamphetamine and amphetamine and admitted that she had been snorting methamphetamine daily. CSB also sought an order to excuse it from making reasonable reunification efforts under R.C. 2151.419(A)(2)(e) because each parent had previously had their parental rights involuntarily terminated as to several half-siblings and one full sibling of these children.

{¶6} The juvenile court removed C.G. and A.G. from the home and placed them in the emergency temporary custody of CSB. Two days later, CSB placed both children with a paternal

aunt ("Aunt"), where they remained throughout this case. The children adjusted well to living in that home and Aunt expressed a desire to adopt both children, if the trial court ultimately terminated parental rights.

{¶7} After the adjudicatory hearing, the trial court adjudicated both children dependent under R.C. 2151.04(C) and (D), also adjudicated A.G. as neglected under R.C. 2151.03(A)(2) because Mother had failed to meet the medical needs of his recent Hepatitis C diagnosis. The trial court also granted CSB a reasonable efforts bypass under R.C. 2151.419(A)(2)(e).

{¶8} The case proceeded to a dispositional hearing on CSB's request for permanent custody. Mother opposed the motion, and alternatively sought legal custody of both children or additional time to work toward reunification, but she did not present any evidence at the hearing. Father supported the motion for permanent custody so that Aunt could pursue adoption of both children. Following the dispositional hearing, the trial court terminated parental rights and placed C.G. and A.G. in the permanent custody of CSB. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S DECISION TO GRANT PERMANENT CUSTODY TO THE AGENCY[] WAS AGAINST [THE] MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE BEST INTEREST OF THE CHILDREN.

{¶9} On appeal, Mother challenges the trial court's permanent custody judgment as being against the manifest weight of the evidence. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest

miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S*., 75 Ohio St.3d 95, 98-99 (1996).

{¶11} On the first prong of the permanent custody test, the trial court found that C.G. and A.G. could not be returned to either parent's custody within a reasonable time or should not be returned to their custody based on one of the grounds set forth in R.C. 2151.414(E). *See* R.C. 2151.414(B)(1)(a). Mother's argument suggests that the trial court based this first prong finding on her "failure to remedy" the home conditions ground set forth in R.C. 2151.414(E)(1), as she focuses most of her argument on evidence about her compliance with the case plan.

{¶12} CSB did not allege that the R.C. 2151.414(E)(1) factor applied in this case, however, and the trial court did not find that it did. Had CSB alleged the ground set forth in R.C. 2151.414(E)(1), the trial court would have been required to consider whether Mother remedied the conditions that caused the children's removal, which typically involves a review of the extent to

which the parent complied with the court-ordered case plan. *See*, *e.g.*, *In re L.C.*, 2019-Ohio-5222, ¶ 24 (9th Dist.); *In re K.S.*, 2014-Ohio-4188, ¶ 8-9 (9th Dist.). In this case, there was no court-ordered case plan. The trial court excused CSB from making reasonable efforts to reunify the children with their parents under R.C. 2151.419(A)(2)(e) and did not adopt the case plan previously filed by CSB.

{¶13} Instead, the trial court based its first prong finding under R.C. 2151.414(B)(1)(a) solely on the ground set forth in R.C. 2151.414(E)(11). Specifically, the trial court found that the parents had their parental rights involuntarily terminated as to a sibling of these children and failed to present clear and convincing evidence that, "notwithstanding the prior termination, [they] can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child[ren]." *See* R.C. 2151.414(B)(1)(a); 2151.414(E)(11).

{¶14} Although Mother does not challenge the trial court's finding under R.C. 2151.414(E)(11), it was fully supported by the evidence before the trial court. CSB presented certified records from the 2019 juvenile case involving J.G., the full sibling of C.G. and A.G. Those records demonstrated that the juvenile court involuntarily terminated both parents' parental rights to J.G. during February 2020. Therefore, CSB presented clear and convincing evidence that Mother had her parental rights involuntarily terminated to a sibling of C.G. and A.G.

{¶15} Because CSB met its burden to prove the prior involuntary termination of Mother's parental rights, the statutory burden shifted to Mother to prove by clear and convincing evidence that, despite that 2020 permanent custody judgment, she was able to provide "a legally secure permanent placement and adequate care for the health, welfare, and safety of the child[ren]." R.C. 2151.414(E)(11); *In re Z.S.*, 2021-Ohio-2022, ¶ 26 (9th Dist.). The trial court correctly concluded that Mother did not meet that burden. Mother did not testify at the final hearing or present any

evidence on her own behalf to dispute the agency's evidence or to even suggest that she had resolved her parenting problems and was prepared to provide her children with a stable home.

{¶16} Next, the trial court found that permanent custody was in the children's best interest. When reviewing the trial court's best interest determination, this Court focuses primarily on the specific factors set forth in R.C. 2151.414(D). *In re M.S.*, 2023-Ohio-1558, ¶ 25 (9th Dist.). The trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the children, their wishes and custodial history, their need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see also In re R.G.*, 2009-Ohio-6284, ¶ 11 (9th Dist.). The factor set forth in R.C. 2151.414(E)(11) applied in this case.

{¶17} Mother had been encouraged to attend the children's doctor's appointments, but she did not. Consequently, her interaction with the children during this case was limited to supervised in-person visits and phone calls because she admitted that she continued to use methamphetamine daily. Mother usually attended scheduled visits but sometimes came with a paramour who had not been approved by CSB to attend the visits. Aunt supervised the visits in the home of another aunt or in the community. She expressed concern that Mother was often distracted during the visits and focused too much attention on her phone, what was going on outside, or was otherwise not attentive to her children.

{¶18} The children's interaction with Aunt was consistent and positive. They had assimilated well into Aunt's home, where they resided with Aunt and her three teenaged children. Witnesses observed a bond between Aunt's family and the children. Aunt was interested in

adopting the children and was willing to allow Mother to have ongoing contact with the children, provided she behaved appropriately.

{¶19}  At the time of the hearing, C.G. and A.G. were both under the age of four years old and were too young to express their wishes about where they wanted to live.  The guardian ad litem spoke on their behalf.  She explained that she had also been the guardian ad litem for these children during their 2022 juvenile case.  She had also worked with Mother during the cases involving some of the other siblings' cases.  She expressed concern that Mother had struggled with the same parenting problems for many years, which had resulted in the loss of numerous other children, but she still had not committed herself to improving her ability to parent a child.

{¶20}  The custodial history of these young children had included two periods of time during which they were removed from Mother's custody and resided in temporary placements.  They had lived in custodial limbo for most of their lives and needed legally secure permanent placements, which Mother was not able to provide.

{¶21}  Finally, the trial court was required to consider that Mother had previously lost custody of several older siblings of these children.  Most recently, during February 2020, the Summit County Juvenile Court involuntarily terminated Mother's rights to J.G., a full sibling of these children.  At the permanent custody hearing in this case, Mother had the opportunity to attempt to rebut the presumption that she continued to be an unfit parent more than five years later.  Although Mother's counsel voiced opposition to the agency's motion and alternatively sought a return of legal custody of the children or an extension of temporary custody, Mother failed to testify at the hearing or present any evidence on her own behalf.  Mother did not dispute any of the agency's evidence that she continued to struggle with the same parenting problems that caused

the 2020 termination of her parental rights: substance abuse, untreated mental illness, an overall lack of stability in her life, and an inability to meet the basic needs of her children.

{¶22} Given the undisputed evidence presented at the hearing, the trial court did not lose its way by granting CSB's motion for permanent custody of C.G. and A.G. *See Eastley* at ¶ 20. Mother's assignment of error is overruled.

### III.

{¶23} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

HENSAL, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

CHARLES TYLER, SR., Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

BRIAN ASHTON, Attorney at Law, for Appellee.

SHUBHRA AGARWAL, Guardian ad Litem.